Jeffrey W. Herrmann
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Ave., Suite 401
Saddle Brook, New Jersey 07663
(201) 845-9600

Patricia I. Avery
Matthew Insley-Pruitt
Robert Plosky
WOLF POPPER LLP
845 Third Avenue, 12th Floor
New York, New York 10022
(212) 759-4600

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD S. STERN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION,<br><br>Defendant. | Civil Action No.:<br><br><u>CLASS ACTION COMPLAINT</u><br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Howard S. Stern, residing at 801 Mayflower Ct., Middletown, NJ 07748 ("Plaintiff"), by his attorneys, alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge, against Costco Wholesale Corporation ("Costco" or "Defendant"):

**NATURE OF THE ACTION**

1. Plaintiff purchased a package of six cans of Costco's Kirkland Signature Premium Chunk Chicken Breast ("Kirkland Canned Chicken") for $10.79 because it seemed like a

reasonable price to pay for chicken. The label says that each can contains a net weight of 12.5 ounces and the can itself is more than two inches tall. However, when Plaintiff came home and opened the first can, he was surprised to see that the chunks of chicken were swimming in a pool of water. He drained the cans, weighed the solid pieces of chicken, and found that each of the cans contained slightly more than seven ounces of chicken, meaning that almost half of the of the contents of each can was water.

2. Plaintiff now brings this action individually and on behalf of all other citizens of New Jersey who purchased cans of Kirkland Canned Chicken (the "Class") at any time within the last six years (the "Class Period").

3. As alleged herein, Costco has continuously engaged in unconscionable business practices and deceptive acts in connection with the marketing and sale of its Kirkland Canned Chicken during the Class Period which have injured Plaintiff and the Class and which will continue to injure consumers unless the practices are stopped.

4. Furthermore, Defendant's practices violate the United States Department of Agriculture's ("USDA") Poultry Products Inspection Act ("PPIA"). *See* 9 C.F.R. § 381.157(b). Under the PPIA, Costco could call its product "Premium Chunk Chicken Breast Packed in Water" if it increased the amount of chicken in each can to 10 ounces (i.e., 80% of 12.5 ounces) or, if it keeps the same amount of chicken, it must include the percentage of water in the name of the product (e.g., "Premium Chunk Chicken Breast Packed in 44% Water").

5. Costco's conduct alleged herein constitutes an unconscionable and deceptive commercial practice in violation of the New Jersey Consumer Fraud Act ("NJCFA") and a breach of implied warranty. Plaintiff seeks an order enjoining such practice, as well as monetary damages.

## PARTIES

6.  Plaintiff Howard S. Stern is a citizen of the State of New Jersey and resides in the town of Middletown, New Jersey. Mr. Stern is a member of Costco and purchased Kirkland Canned Chicken from Costco store number 222, located in Hazlet, New Jersey on May 14, 2016.

7.  Defendant Costco, a Washington corporation, together with its subsidiaries, operates membership warehouses. The company offers branded and private-label products in a range of merchandise categories (such as canned chicken breast), including Kirkland Signature, its house brand. Costco believes that its products have a reputation for high quality at low prices, and Costco's chief operating officer said that "all Kirkland Signature products must be equal to or better than the national brands, and must offer a savings to our members." Costco Connection, "It's In the Label: Kirkland Signature Is a Brand Apart," Oct. 2009, http://www.costcoconnection.com/connection/200910?pg=31#pg31. Headquartered in Issaquah, Washington, Costco common stock trades on the NASDAQ Global Select Market under the ticker symbol "COST."

## JURISDICTION AND VENUE

8.  This Court has original jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d), in that the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiff is a citizen of New Jersey while Defendant is a citizen of a different state.

9.  Venue properly lies in this district pursuant to 28 U.S.C. § 1391(a) because Plaintiff resides and Defendant has transacted substantial business within this District within the meaning of 28 U.S.C. § 1391(a) as defined in 28 U.S.C. § 1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**FACTUAL ALLEGATIONS**

10. Plaintiff was shopping at the Costco location in Hazlet, New Jersey on May 14, 2016, when he saw a display of Kirkland Canned Chicken at the end of an aisle. The cans were grouped for sale in a package of six 12.5 ounce cans, with an opaque plastic wrapper that looks like this:



11. The package includes a Nutrition Facts panel as well as suggested recipes on the back side. The back of the package looks like this:



12. Plaintiff purchased the package for $10.79, which he thought was a reasonable price for the size of the cans and the amount of chicken that he thought was inside the cans. He could not see inside the cans before he opened them, but he reasonably expected that they would be filled mostly with meat and a little water.

13. Each can in the package is slightly more than two inches tall and four inches in diameter. The labels on each can are not visible in the six-can package prior to purchase, but the label on the can looks like this:





14. Plaintiff looked at the price label on the shelf before he purchased the Kirkland Canned Chicken. It is also Plaintiff's habit and common course of behavior to look at the unit price of products before he makes a purchase. As is required by New Jersey's Unit Price Disclosure Act, the price label includes the unit price for the chicken, expressed as the price per pound of chicken. *See* N.J.A.C. § 13:45A-14.4(b). Notably, this unit price is calculated assuming that all 12.5 ounces contained in each can are chicken. At $10.79 for a package of six cans, Kirkland Canned Chicken would cost $2.30 per pound if all 12.5 ounces in each can were considered chicken. In contrast, the unit price for Kirkland Canned Chicken would be $4.11 per pound if only the seven ounces of actual chicken pieces were counted.

15. When Plaintiff brought the package home, he was surprised when he opened the first can and found pieces of chicken swimming in water. At first he thought it was a mistake in the first can, so he opened every can in the package but they were all filled with a surprising amount of water. Plaintiff had anticipated that each can would be filled to the maximum amount possible with chicken, but instead he wound up pouring down the drain almost half of the contents of each

can.

    16.    When a consumer opens a can of Kirkland Canned Chicken, it looks like this:



    17.    Plaintiff then weighed the chicken pieces in all of the cans in the package, and each can contained between 7.4 and 8 ounces of meat. This means that as much as 44% of weight of the contents of the can is water.

    18.    If a consumer drains the 2/3 of a cup of water in each can of Kirkland Canned Chicken, the remaining meat would like this:



19.     Plaintiff later returned to Costco and purchased a second package of Kirkland Canned Chicken because he thought that there might have been a problem with the first package that he purchased. The cans in the second package were just as full of water as the cans in the first package.

20.     The label for Kirkland Canned Chicken simply says that it is "Packed in Water," which violates the USDA's Poultry Products Inspection Act because of the low amount of chicken in the can. The PPIA requires all boned canned poultry to meet the requirements set out in a table listing weight ranges and labelling requirements. *See* 9 C.F.R. § 381.157(b), (e). For example, if the product contains 80% to 90% cooked, deboned poultry meat and 20% to 10% liquid (such as broth or water), then the product name must specify that the poultry is "with broth." 9 C.F.R. § 381.157 (Table II). However, if the poultry meat is only between 50% and 80% with 20% to 50% water or broth, then the product name must disclose the percentage of water or broth. *Id.* Costco's Kirkland Canned Chicken does not comply with either of these requirements since it

contains less than 80% chicken and does not disclose the percentage of water in the can.

21. Plaintiff and the Class receive little benefit from water in the can that exceeds the USDA's labelling requirement. Costco does not intend for consumers to use the excess water in the can. For example, one recent package includes a recipe for Asian Chicken Lettuce Wraps, which requires the chicken to be drained. The packages also have a booklet of suggested recipes fixed to a can that use the canned chicken. These recipes, which include Chicken Sliders and Chicken Salad, direct consumers to drain the chicken before using it in a dish.

22. Plaintiff reasonably believed that he was purchasing a package that contained an adequate amount of chicken in each can because of the misrepresentations on the label, the packaging, the price label on the shelf, the unit pricing, the other materials included with the package, and the size of the can. However, he received a product that had substantially less usable chicken than should have been in the can. Plaintiff has suffered an ascertainable loss in the amount of the difference between the price that he paid for what he reasonably believed he was purchasing and the value of what he actually received. For example, if the cans only contain 7.5 ounces of chicken then this is only 60% of the contents of the 12.5 ounce can. This 60% is 25% less than the 80% minimum allowed under the USDA's requirements for the current label Costco uses.. Therefore, Plaintiff overpaid by 25%, or $2.70 for the $10.79 package. In other words, Plaintiff is not contesting the quality of the chicken chunks, but rather that he was shortchanged and received too little chicken.

## **CLASS ALLEGATIONS**

23. Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). The proposed Class consists of:

>All citizens of the State of New Jersey who purchased Costco's Kirkland Canned Chicken at any time from August 10, 2010, to the present.

24. The members of the Class are so numerous that joinder is impracticable. At a minimum, thousands of persons purchased Costco's Kirkland Canned Chicken during the Class Period. Moreover, thousands more will continue to purchase the product if Costco's practices are not stopped. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Upon information and belief, Costco maintains detailed sales data for every purchase made by its members at Costco's warehouse stores. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant (and, to the extent applicable, third party retailers and vendors).

25. Plaintiff's claims are typical of the claims of the entire Class, as he purchased Costco's Kirkland Canned Chicken during the Class Period and sustained damages as a result of Costco's conduct.

26. Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature.

27. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

>a) whether Costco's Kirkland Canned Chicken contains a greater percentage of liquid than the maximum amount allowed by statute;
>
>b) whether Defendant warranted that its Kirkland Canned Chicken contained an

adequate amount of chicken for a 12.5 ounce can (as measured by subtracting the maximum percentage of liquid from the total net weight of the product);

c) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken violated the NJCFA;

d) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken constituted unconscionable commercial practices in violation of the NJCFA;

e) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken constituted deception in violation of the NJCFA;

f) whether Defendant warranted that its Kirkland Canned Chicken is legal for sale in the United States and, if so, whether Defendant breached such warranties;

g) whether Defendant's Kirkland Canned Chicken violates the Poultry Products Inspection Act;

h) whether Defendant violates the New Jersey's Unit Price Disclosure Act;

i) whether Defendant's conduct, as set forth herein, damaged members of the Class and if so, the, the measure of those damages;

j) whether Defendant's acts and practices in connection with the promotion and sale of its Kirkland Canned Chicken should be enjoined;

k) whether the NJCFA should apply to all class members; and

l) the nature and extent of any other relief that should be provided.

28. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for

the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

29. Class certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because the Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

30. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## FIRST CAUSE OF ACTION

**Violation of New Jersey Consumer Fraud Act**
(**N.J.S.A. 56:8-1** *et seq.*)

31. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

32. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

33. The NJCFA prohibits certain deceptive commercial behavior that is an unlawful practice. N.J. Stat. Ann. § 56:8-2.

34. Defendant, as a corporation, company or seller, is a "person" within the meaning of the NJCFA, and as such is prohibited from engaging in unconscionable business practices and deceptive acts. N.J. Stat. Ann. § 56:8-1(d).

35. However, as described herein, Defendant's conduct with respect to the promotion and marketing of its Kirkland Canned Chicken is in violation of the NJCFA and has created an impression that is misleading and deceptive to the ordinary or average consumer.

36. Although not required to state a claim under the NJCFA, Plaintiff would not have

purchased Costco's Kirkland Canned Chicken if he knew that it contained far more liquid than was permissible under USDA regulations and was not legal for sale in the United States. Plaintiff would consider purchasing Kirkland Canned Chicken again if it contained an adequate amount of chicken.

37. As detailed herein, Defendant's conduct with respect to its promotion, marketing and sale of its Kirkland Canned Chicken constitutes unconscionable commercial practices, deceptions, frauds, false promises or misrepresentations of material facts, including representing and suggesting to consumers that its Kirkland Canned Chicken includes an adequate amount of chicken.

38. As a result of Defendant's misconduct (and proximately caused thereby), Plaintiff and the Class have suffered an "ascertainable loss," in that they purchased a product and received less than what was promised, and they are entitled to receive an amount necessary to fulfill their expectation of the promised product. As explained above, consumers have received 25% less meat than is allowed under the USDA regulations, and therefore have overpaid by 25%, or $2.70 per package.

## SECOND CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

39. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

40. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

41. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that its Kirkland Canned Chicken contained an adequate amount of chicken

for a 12.5 ounce can (vis-à-vis meeting USDA regulations limiting the maximum amount of liquid permissible in the product) and that it was legal for sale in the United States.

42. Defendant breached the warranty implied in the contract for the sale of its Kirkland Canned Chicken because the product was not merchantable at the time of sale in the United States and was not fit for its intended and ordinary purpose because it contained more liquid than was permissible under USDA regulations. As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

43. Plaintiff and Class members purchased Costco's Kirkland Canned Chicken in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

44. The product was not altered by Plaintiff or Class members, and was defective at the time of sale, by the time it left the exclusive control of Defendant. Defendant knew it would be purchased and used without additional testing by Plaintiff and Class members.

45. As a direct and proximate result of Defendant's breach of implied warranty, Plaintiff and the members of the Class suffered economic loss and have been otherwise injured and harmed because: (a) they would not have purchased Kirkland Canned Chicken on the same terms if the true facts were known concerning its quantity and failure to comply with USDA regulations; (b) they paid a price premium for Kirkland Canned Chicken due to Defendant's promises that it contained an adequate amount of chicken for a 12.5 ounce can; and (c) Kirkland Canned Chicken did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

(a) determining that this action is properly brought as a class action and certifying Plaintiff as the representative of the Class and his counsel as Class counsel;

(b) awarding Plaintiff and the proposed Class members their damages, trebled;

(c) awarding preliminary and permanent injunctive relief restraining Defendant from continuing the unlawful practices set forth herein;

(d) awarding attorneys' fees and costs and expert fees and reimbursement of costs and expenses expended in litigating this action; and

(e) granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims so triable.

DATED: August 10, 2016

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP

By: *s/ Jeffrey W. Herrmann*
Jeffrey W. Herrmann
Peter S. Pearlman
Park 80 Plaza West-One
Saddle Brook, New Jersey 07663
(201) 845-9600

Patricia I. Avery
Matthew Insley-Pruitt
Robert Plosky
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
(212) 759-4600

*Counsel for Plaintiffs and the Class*